**In re MARCALUS MFG. CO., Inc.**

**No. 11034.**

United States Court of Appeals,
Third Circuit.

Argued June 2, 1953.

Decided June 30, 1953.

Harold Green, New York City (Carl F. Barbato, Montclair, N. J., Simon S. Hamburger, New York City, on the brief), for appellant.

Frederic W. Schumann, Jersey City, N. J. (Charles Danzig, Newark, N. J., Edward J. O'Mara, Jersey City, N. J., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Employers Mutual Liability Insurance Company of Wisconsin appeals from an order of the district court confirming the referee's partial disallowance of its claim for premiums, the claim having been filed in Chapter X reorganization proceedings. We think the result arrived at by the lower court is proper.

Appellant had issued the debtor, Marcalus Manufacturing Co., Inc., at least six policies of insurance which were in force during varying periods between August 22, 1946 and August 22, 1948. We are here principally concerned with a workmen's compensation policy and, to a lesser extent, a general liability policy, both in effect from May 10, 1947 to May 10, 1948.[1] With respect to these two coverages the policies provided for monthly payments of estimated premiums with adjustments to be made after the expiration of the policies upon an audit of the insured's records by the insurer.[2] Debtor had paid $24,748.40 premiums in advance on the workmen's compensation policy and $426.18 on the general

---

1. The debtor also had automobile liability, burglary and fidelity coverage. Two policies were issued on automobile liability, one each on the others.

2. Without such audit it would have been impossible to determine the amount of

the earned premiums. The premium rate of the workmen's compensation policy was based on the number of employees and their earnings during the period of coverage. The cost of liability coverage was to be computed on the various haz-

liability insurance. More than ten months after these policies expired it received a letter from appellant dated March 24, 1949 informing it that an enclosed invoice covering the workmen's compensation and liability policies "is based upon the figures obtained when our auditor recently called to go over your records." The latter noted that the earned premium on the workmen's compensation policy was $35,651.33 and that premiums previously billed amounted to $25,898.40,[3] leaving an adjusted premium of $9,752.93 owing. Appellant's letter further stated, however, that a dividend of $5,347.70 was to be deducted from the latter sum, leaving a net adjusted premium due on that policy of $4,405.23. These figures as well as others relating to a premium due on the liability policy (reduced by a dividend of $218.57) were reflected in the invoice.

On May 4, 1949, forty days after it received the insurer's invoice,[4] debtor petitioned for a chapter X reorganization. On June 9, 1949 appellant filed a proof of claim in the amount of $10,300.45, representing chiefly the adjusted premiums due on the workmen's compensation and liability policies.[5] Appellant did not credit debtor with the two dividends of $5,347.70 and $218.57. In April, 1951 the trustee filed objections to the claim. In the same month a plan of reorganization which provided for payment in full of general creditors' claims was confirmed.

Appellant is a mutual insurance company. It is the practice of these companies to declare "dividends" in the form of premium refunds as policies expire. The dividends represent a return to policyholders (all of whom are "owners" of the company) of a portion of earned premimums not expended in the operations of the company. The policy in question [6] provided that dividends should be payable to the insured in accordance with resolutions of appellant's board of directors. The pertinent part of the resolution addressed to policies expiring in March and April, 1948, and by a later resolution made applicable to policies expiring in May, 1948, reads:

"4. A premium refund shall not be payable to any member unless the terms of the policy with respect to the payment of premium shall have been fully complied with, it being expressly understood that payment following legal proceedings for collection shall not constitute such compliance. When payment is made following legal proceedings, there shall be deducted from any premium refund payable all costs of collection incurred by the company except salaries of salaried employees. There shall also be deducted the amount of any premium remaining unpaid. A premium refund shall not become due and payable to any member who is in default in the payment of any premium due to the company. Premium refunds may be credited to the premium account of the member to the extent of his obligations to the Company."

---

ards described in the riders attached to the policy. The insured agreed to maintain records as to both employees and hazards and to keep them available for the insurer's examination for one year after the expiration of the policies.

3. This figure is $1,150 higher than the amount representing advance premiums actually paid, as found by the referee.

4. We assume that appellant's letter was received on March 25, 1949.

5. The $10,300.45 figure was derived as follows:

Workmen's compensation (earned) premium (not including credit for dividend) billed March 24, 1949 .... $ 9,752.93

Workmen's compensation (advance) premium billed before March 24, 1949 but not yet paid ................. 1,150.00

Liability premium (not including credit for dividend) plus other miscellaneous charges ...................... 665.55

$11,568.48

Less credits on three other policies ................ 1,268.03

$10,300.45

6. We shall henceforth speak only of the workmen's compensation policy, although the discussion is equally applicable to the liability policy.

■ The letter of March 24, 1949 and the accompanying invoice did credit debtor's premium account with the premium refunds, as contemplated in the last sentence of the quoted paragraph. The insurer, however, contends that under the prior language debtor is not entitled to a credit on account of the refund because of a default in the payment of premiums. We agree with appellee that there has been no showing that debtor was in default. The policies provided that for one year after their expiration the insured's books would be available for the insurer's inspection. As noted, debtor was not notified of the amount of earned premiums due on these policies until more than ten months after they had expired. There is nothing to indicate that debtor's failure to pay those premiums within the forty days before it filed its reorganization petition served to put it in default within the meaning of the resolution, nor as far as the record shows, was it so notified. In our view appellant is not entitled to take the position that debtor's failure to pay the premiums within those few weeks [7] constituted a default or a noncompliance with "the terms of the policy with respect to the payment of premiums."

■ There is another reason why appellant cannot prevail. Even had it been able to demonstrate that debtor's nonpayment of the premiums before it filed its petition was a default the wording of the resolution merely indicates that in such circumstances a refund shall not be *payable* to the insured. It is not inconsistent to refuse actual payment of a refund to an insured in default while permitting a *credit*

to be given him "to the extent of his obligations to the Company."[8] This view is further corroborated by reading the first and second sentences of Paragraph 4 of the resolution, above, together: it is first stated that premium refunds shall not be payable unless the terms of the policy respecting premium payments have been fully complied with and then that after payment is made following legal proceedings the costs of collection shall be deducted from the refund. It seems clear from an examination of Paragraph 4 as a whole that it was the intention of appellant's board of directors to make no out-of-pocket payments of refunds while premiums were still owing. This not only does not conflict but is perfectly consistent with crediting such refunds to the premium account or of deducting collection costs from refunds in cases where litigation is resorted to in effecting the collection of premiums.

■ Even more significant than the language in Paragraph 4 permitting the crediting of refunds is the fact that nowhere in that paragraph or in any other part of the resolution does it appear that refunds of defaulting policyholders are to be forfeited.[9] It is a hornbook principle that the law does not favor forfeitures. In the absence of a clear showing that such a forfeiture occurred we cannot say that debtor is not entitled to the credit in question.[10]

The cases relied on by appellant, such as L. Michel Plumbing, etc., v. Lumbermen's Mutual Cas. Co., 202 Misc. 642, 44 N.Y.S.2d 627 (City Ct. of N. Y., Bronx Co., 1943) and American Mutual Liability Ins. Co. v. Condon, 1932, 280 Mass. 517,

7. Since appellant does not argue that debtor's petition for reorganization *ipso facto* placed debtor in default we will not discuss this point.

8. Appellant's *contention* that the quoted phrase refers only to unpaid premiums due on other policies is unrealistic.

9. It may be pointed out that Paragraph 4 of the resolution, above quoted, is only a proviso modifying the principal part of the resolution which declares a premium refund on all affected policies.

10. Cf. Garofano Const. Co., Inc., v. Lum-

ber Mutual Casualty Ins. Co. of New York, 176 Misc. 159, 26 N.Y.S.2d 780, 783 (City Ct. of N. Y., N.Y.Co. 1941), where the court said:

"The declaration of a dividend payable to members of a mutual insurance company is tantamount to an adjustment of premium rates to conform to the earnings and reserve funds of the company. The premium paid by a member less the amount returned to him as a dividend represents the actual net premium. To require of plaintiff more than this net premium is the imposition upon it of a penalty, the forfeiture of a right."

183 N.E. 106 are not contrary to the conclusion we have arrived at. In the Michel case, a suit by an insured to recover premium refunds, it does not appear that the resolution in question permitted the crediting of premium accounts. There, as here, payment following legal proceedings did not constitute compliance with the terms of the policy but, unlike the present situation, the insured had been sued for the premiums. Michel did not contend that it was entitled to the refund under the terms of the resolution but attacked the latter as unreasonable and arbitrary and asserted that compliance with its terms had been waived, all of which arguments were rejected by the court.

In the Condon decision there is likewise no indication that the resolution there involved was similar to the pertinent parts of the instant resolution. Moreover, the insured was clearly in default, having never paid any part of the premium due on an automobile liability policy, although that premium was determinable in advance.[11] An examination of the other case law cited to us is equally unrewarding.

The judgment will be affirmed.

11. The suit, in fact, was instituted by the insurer to recover the entire premium.